IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

D&T OAK CREEK STATION, INC.,      :

    Plaintiff, Counterclaim      :
    Defendant,
                                                       :      Case No. 3:09cv464

vs.
                                                       :      JUDGE WALTER HERBERT RICE

TRUE NORTH ENERGY, LLC,
                                                       :

    Defendant, Counterclaim
    Plaintiff,                             :

    vs.                                             :

TOM PARRETT,                         :

    Counterclaim Defendant.   :

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART DEFENDANT, COUNTERCLAIM PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT (Doc. #22); CONFERENCE CALL SET

---

This litigation was initiated in the Common Pleas Court for Montgomery County, Ohio, from whence the Defendant removed it, in timely fashion. In its Notice of Removal, Defendant True Energy North, LLC ("Defendant," "Defendant, Counterclaim Plaintiff" or "True Energy") alleges that this Court can exercise

original subject matter jurisdiction over this matter, pursuant to 28 U.S.C. § 1331,[1] given that the Plaintiff D&T Oak Creek Station, Inc. ("Plaintiff" or "D&T"), has set forth a claim under the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801, et seq. See Doc. #1 at ¶ 4. In addition, the Defendant asserts that this Court can exercise pendent, now supplemental, jurisdiction over the Plaintiff's remaining claims, in accordance with 28 U.S.C. § 1367. Id. Diversity of citizenship does not exist herein, since a limited liability company, such as Defendant, is a citizen of each state in which one of its members is a citizen. Delay v. Rosenthal Collins Group, LLC, 585 F.3d 1003, 1005 (6th Cir. 2009). One of Defendant's members, like D&T, is a citizen of Ohio.

In its Complaint (Doc. #2), Plaintiff sets forth one narrow federal law claim, alleging with the Fourth Claim for Relief that the Defendant violated the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801, et seq., by failing to deliver timely notice of termination of the franchise agreement between the parties. In its entirety, the Plaintiff's Fourth Claim for Relief provides:

> 37. The averments in Paragraphs 1 through 36 are herein incorporated as if fully restated.
> 38. Under the Petroleum Marketing Practices Act, 15 U.S.C. [§] 2804(a)(2), a franchisor must provide notice of the termination of a franchise agreement no fewer than ninety days prior to the date upon which the termination is to take[] effect.
> 39. Under the Petroleum Marketing Practices Act, 15 U.S.C. [§] 2804(c)(2), a franchisor must deliver notice of termination to a franchisee by certified mail or by personal delivery.
> 40. Defendant's notice of termination (Ex. 4) dated November 9, 2009, stated that it was effective as of the same date, and was delivered by ordinary mail.

---

[1] Section 1331 authorizes District Courts to exercise subject matter jurisdiction over all civil actions arising under federal law.

- 2 -

> 41. By virtue of Defendant's non-compliance with 15 U.S.C. [§ 2804](a)(2), (c)(2), Defendant's attempted termination of the Retail Agreement was ineffective.

Doc. #2 at ¶¶ 37-41. The Plaintiff has also set forth three claims for relief arising under state law, to wit: breach of contract, promissory estoppel and unjust enrichment. See Doc. #2. Plaintiff alleges that it entered into a number of agreements with True North, including a Retail Sales Agreement ("RSA");[2] an Incentive Agreement, which extended the RSA until July 31, 2014 (Doc. #2 at ¶ 8); and, on April 28, 2009, an Equipment Lease with Option to Purchase ("Lease").[3] Id. at ¶ 10. According to Plaintiff, Defendant removed that equipment on November 3, 2009. Id. at ¶ 12.

In the First Claim for Relief, Plaintiff alleges that, although its payments were routinely late, Defendant agreed to accept late payments, and not to terminate any contracts as a result. Id. at ¶¶ 15-16. Nevertheless, Defendant informed D&T by letter, under date of November 1, 2009, of its intent to terminate the RSA, Incentive Agreement and the Lease. Id. at ¶ 17. Despite Plaintiff's complete performance of the parties contracts, as modified by the parties' oral agreement that True North would accept D&T's frequent late payments, Defendant followed

---

[2]The RSA relates to Plaintiff's operation of a motor vehicle service station and retail outlet in Kettering, Ohio. Doc #2 at ¶ 4. The RSA was initially effective for four years beginning August 1, 2008. Id. ¶¶ 4 and 7. In accordance with the RSA, Plaintiff agreed to purchase petroleum products from True North. Id. Defendant also agreed to permit D&T to use the trademarks and trade dress of the Shell Oil Company. Id.

[3]Under the Lease, Defendant agreed to lease the equipment necessary to operate a service station to D&T. Doc. #2 at ¶ 11.

up on its threat, on November 3, 2009, and removed the equipment it had installed in accordance with the lease. Id. at ¶12.

In its Second Claim for Relief, Plaintiff sets forth a claim of promissory estoppel, based upon the same allegations as its First Claim for Relief, with the added allegation that it was required to deposit $15,000, to cover the amount of any of its electronic funds transfers which were returned for insufficient funds. Doc. #2 at ¶¶ 24-26. Plaintiff alleges that Defendant knew that, by making the deposit, it (D&T) would rely on Defendant's promise not to terminate any of the parties' agreements (Id. at ¶¶ 27,29), and that D&T did rely reasonably rely on that promise to its detriment. Id. at ¶¶ 28, 30.

With its Third Claim for Relief, D&T sets forth a claim of unjust enrichment, predicated upon the Defendant's retention of the $15,000 deposit referenced above. Doc. #2 at ¶¶ 32-36.

In its Counterclaim (Doc. #6), Defendant has set forth state law claims of breach of contract and breach of unconditional personal guarantee against Plaintiff and its owner, Counterclaim Defendant Tom Parrett ("Counterclaim Defendant" or "Parrett"), who unconditionally guaranteed Plaintiff's obligations under the RSA, Lease and Incentive Agreement.[4]


This litigation is now before the Court on the Defendant, Counterclaim Plaintiff's Motion for Summary Judgment (Doc. #22). As a means of analysis, the Court will initially discuss the procedural standards which much be applied

---

[4]In its Decision of August 30, 2011 (Doc. #29), this Court rejected Defendant's efforts to add additional parties.

- 4 -

whenever a federal court rules on a motion for summary in accordance with Rule 56 of the Federal Rules of Civil Procedure, incorporating into its discussion the amendments to Rule 56, which became effective December 1, 2010.[5]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323. See also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir. 1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995). Read together, Liberty Lobby and Celotex stand for the proposition

---

[5]True North filed its motion on December 13, 2010.

- 5 -

that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). See also Michigan Protection and Advocacy Service, Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex Corp., 477 U.S. at 324. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and

draw all reasonable inferences in the favor of that party. Anderson, 477 U.S. at 255 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure, § 2726. Rule 56(c)(1) provides:

> (c) Procedures.
> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." Interroyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990). See also L.S. Heath & Son, Inc. v. AT&T Information Systems, Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n. 7 (5th Cir.), cert. denied, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ...."). See also, Fed. R. Civ. P. 56(c)(3).

With its Motion for Summary Judgment (Doc. #22), True North raises, broadly speaking, three issues, to wit: 1) whether the evidence raises a genuine issue of material fact on D&T's claims for breach of contract, promissory estoppel and/or unjust enrichment; 2) whether Plaintiff's state law claims are preempted by the PMPA; and 3) whether True North is entitled to recover liquidated damages from D&T and Parrett. As a means of analysis, the Court will initially address the Defendant's argument that the Plaintiff's first three claims for relief are preempted by the federal statute. If it concludes that those claims are not preempted, it will address Defendant's request for summary judgment on the merits of Plaintiff's claims of breach of contract, promissory estoppel and unjust enrichment. The Court will then address the Defendant, Counterclaim Plaintiff's request for summary judgment on its claim for liquidated damages.

I. Preemption

The preemption provision in the PMPA is set forth in 15 U.S.C. § 2806(a)(1), which provides:

(a) Termination or nonrenewal of franchise
(1) To the extent that any provision of this subchapter applies to the termination (or the furnishing of notification with respect thereto) of any franchise, or to the nonrenewal (or the furnishing of notification with respect thereto) of any franchise relationship, no State or any political subdivision thereof may adopt, enforce, or continue in effect any provision of any law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination (or the furnishing of notification with respect thereto) of any such franchise or to the nonrenewal (or the furnishing of notification with respect thereto) of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of this subchapter.

In Geib v. Amoco Oil Co., 29 F.3d 1050, (6th Cir. 1994), the Sixth Circuit discussed preemption under the PMPA, explaining:

> Section 2806(a) of the PMPA, supra note 5, provides a clear textual expression of Congress' preemptive intent. By forbidding enforcement of any provision of state law "with respect to termination" of a motor fuel sales franchise, the language of section 2806(a) indicates that the appropriateness of preemption in any particular case depends upon two factors. First, a court must conclude that the challenged state law applies to a motor fuel sales franchise. State laws which have no application in the context of motor fuel sales are not preempted by the PMPA. See Smith v. Atlantic Richfield Co., 533 F. Supp. 264, 267 (E.D.Pa. 1982), aff'd, 692 F.2d 749 (3d Cir. 1982) (no preemption of state franchise law as applied to convenience store franchise). Secondly, the court must ascertain whether the challenged law regulates an aspect of the franchise relationship pertaining to termination. State laws having no impact on the termination of franchise agreements are also not preempted by the PMPA. See Esso Standard Oil Co. v. Department of Consumer Affairs, 793 F.2d 431, 434-36 (1st Cir. 1986) (no preemption of state rent control law as applied to gas franchise).

Id. at 1057.

In Kelm Oil v. Texaco, Inc., 537 F.3d 290, 298-99 (3d Cir. 2008), the Third Circuit elaborated on § 2806:

> We considered 15 U.S.C. § 2806(a)(1) in O'Shea [v. Amoco Oil Co., 866 F.2d 476 (3d Cir. 1987)] and concluded that "the PMPA preempts only those state laws that regulate the 'grounds for, procedures for, and notification requirements with respect to termination,' to the extent that such laws are not the same as the PMPA." [Id.] at 592 (quoting Bellmore v. Mobil Oil Corp., 783 F.2d 300, 304 (2d Cir.1986)). Accordingly, we stated that the "PMPA only preempts state laws that limit the permissible substantive reasons that a petroleum franchisor can terminate a franchisee" because "[t]he goal of the framers of the PMPA was to create a uniform system of franchise termination, not a uniform system of contract law." Id. at 592-93. We concluded that the plaintiff's state law "contract claims ... in no way involved procedures for or notification requirements with respect to

- 9 -

> termination," and thus were not preempted by the PMPA. Id. at 592 (quotation marks omitted).

Id. at 298-99 (footnote omitted).  In Alvarez v. Chevron Corp., — F.3d —, —, 2011 WL 3850660 (9th Cir. Sept. 01, 2011), the Ninth Circuit discussed preemption under the PMPA:

> The PMPA contains a broad preemption against state and local laws and regulations addressing any acts or omissions covered by the PMPA, "unless such provision of such law or regulation is the same as the applicable provision of this subchapter." 15 U.S.C. § [2806(a)] (emphasis added).

Id. at *7. See also Darling v. Mobil Oil Corp., 864 F.2d 981, 986 (2d Cir.1989) (explaining that a finding of preemption under the PMPA "should be reached in a careful and judicious manner to avoid unwarranted disruption of important state policies").

Based upon the foregoing, this Court concludes that the Plaintiff's state law claims of breach of contract, promissory estoppel and unjust enrichment are preempted by § 2806(a), given that, with those claims, Plaintiff seeks to recover damages predicated upon the fact and the manner in which Defendant terminated the RSA, Lease and Incentive Agreement.[6]

---

[6] As a result of that conclusion, it is not necessary for the Court to address the merits of Plaintiff's common law claims. The court does note, however, that there is much unrebutted evidence before the Court, set forth in the affidavit of Mark Kapel ("Kapel"), Defendant's district manager with authority over D&T's service station, and in Parrett's deposition. For instance, Kapel states that Parrett had unconditionally guaranteed the parties' agreements. In addition, Kapel states, inter alia, that the RSA, copies of which are appended to and authenticated by his affidavit, provides that D&T was required to make payments through True North's electronic funds transfer system. In addition, True North retained the sole discretion to require D&T to make a $15,000 deposit, thus supporting Plaintiff's

Accordingly, the Court sustains Defendant's Motion for Summary Judgment (Doc. #22), as it relates to Defendant's position that Plaintiff's claims for breach of contract, promissory estoppel and unjust enrichment are preempted by § 2806(a) of the PMPA.

II. Liquidated Damages

The central question in this litigation is whether D&T and Parrett can also be held liable for liquidated damages. True North bases its request for liquidated damages on Article 2(b) of the RSA, which provides:

> (b) Retailer acknowledges that Seller has made a substantial investment in Retailer's station based on Retailer's agreement to purchase the products from Seller over a period of ten (10) years from August 1, 2002 (the "Amortization Period"). In consideration for this substantial investment, if Retailer fails to purchase minimum quantities from Seller over the Amortization Period (whether due to Seller's termination or non-renewal or Retailer's termination of its franchise relationship with Seller prior to the end of the Amortization Period) upon Seller's written notice, Retailer immediately shall pay Seller liquidated damages as follows: if termination occurs within the first five years of the Amortization Period, the sum of One Hundred Fifty Thousand Dollars ($150,000) ("Base Liquidated Damages") shall be immediately repaid to Seller. If termination occurs during the sixth year through the tenth year inclusive, liquidated damages will be determined by subtracting from Base Liquidated Damages a credit .025 per gallon cents for

---

allegations concerning the deposit. However, that document, along with Parrett's deposition testimony, dispels the idea that True North actually retains a $15,000 deposit. Notably, in their memorandum opposing Defendant's motion (Doc. #32), Plaintiff and Parrett have not cited evidence to support the opposite conclusion. Kapel also recounts the history of bounced electronic funds transfers by D&T and Parrett. In addition, Kapel's affidavit establishes that, under the RSA, True North had the authority to terminate D&T for its failure to pay for gasoline and that D&T and Parrett remain liable to True North for, inter alia, more than $10,000 for unpaid gasoline.

- 11 -

each gallon Retailer has purchased from Seller from the date of this Agreement to the date of Seller's written notice ("Credits"). If Credits do not equal or exceed the Base Liquidated Damages at the time of the termination of the relationship, the difference between the two amounts shall be immediately repaid to Seller by Retailer. If Credits exceed the Base Liquidated Damages at the time of termination of the relationship, neither Retailer nor Seller shall owe liquidated damages to the other. Retailer acknowledges that other remedies available to Seller are inadequate since they would not place Seller in as good a position as if Retailer had fully performed the Agreement; and that the preceding provisions represent the parties' good faith attempt to reach, in advance, a fair resolution of their competing interests and avoid the difficulty, complications, risks and expenses associated with proving actual damages.

In Sampson Sales v. Honeywell, Inc., 12 Ohio St.3d 27, 465 N.E.2d 392 (1984), the Ohio Supreme Court explained in the syllabus:

> Where the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty, if the damages would be (1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof. Jones v. Stevens, 112 Ohio St. 43, 146 N.E. 894 (1925), paragraph two of the syllabus, followed.)

Id., 465 N.E.2d at 392-93. Based upon Sampson Sales, a decision relied upon by Plaintiff, this Court concludes that True North is not entitled to summary judgment on its claim for liquidated damages. The second factor in Sampson Sales is easily met, in that there is no indication that the RSA, as a whole, is unconscionable. However, this Court cannot agree that Defendant, Counterclaim Plaintiff has

established the first and third factors. As to the first factor, the damages that Defendant, Counterclaim Plaintiff suffered as a result of Plaintiff's breach of the parties' agreements, given its investment in Plaintiff's service station, are apparently not uncertain in amount and difficult of proof, given the fact that Defendant, Counterclaim Plaintiff has been able to calculate the amount that D & T and Parrett owe it for unpaid gasoline and credit card sales. As to the third factor, that "the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof," it is not possible to conclude, as a matter of undisputed fact, that the parties' intent was that Defendant's damages would be the amount stated in the liquidated damages clause, given the Defendant, Counterclaim Plaintiff's seeming ability to calculate damages, from its perspective, to the exact penny.

Accordingly, the Court overrules the Defendant, Counterclaim Plaintiff's Motion for Summary Judgment (Doc. #22), as it relates its claim for liquidated damages.

Based upon the foregoing, the Court sustains in part and overrules in part the Defendant, Counterclaim Plaintiff's Motion for Summary Judgment (Doc. #22). As a result of the Court's rulings herein and the number of claims on which neither party sought summary judgment, the following claims remain to be resolved in this litigation, to wit: 1) Plaintiff's claim under the PMPA; 2) Defendant, Counterclaim Plaintiff's claims for monetary damages against Plaintiff and Parrett, arising out of their failure to pay for all gasoline, credit card purchases and incentive payments; and 3) Defendant, Counterclaim Plaintiff's claim for liquidated damages.

- 14 -

Counsel will note that the Court has scheduled a telephone conference call on Tuesday, October 11, 2011, at 8:45 a.m., for the purpose of selecting a mutually convenient trial date and other dates leading to the resolution of this litigation.

September 29, 2011

                           */s/ Walter Herbert Rice*
                           WALTER HERBERT RICE, JUDGE
                           UNITED STATES DISTRICT COURT

Copies to:

Counsel of Record.


Note: Defendant, Counterclaim Plaintiff has sought a one week extension to file its reply memorandum. Because this decision must be filed on or before September 30th, and because this Court was awaiting the reply memorandum, before filing this decision, the motion for extension has been overruled. However, if, after reading this Court's decision herein, Defendant, Counterclaim Plaintiff, wishes to file a motion seeking reconsideration of any part of this interlocutory order, based upon arguments that would have been set forth in the reply memorandum and/or any other arguments, it is encouraged to do so.